

NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed August 29, 2005

_____
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT LEE GUENTHER, SR. and | § | Case No. 04-80268 HDH-7 |
| BRECCA PRESTON-GUENTHER, | § | |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| THE CADLE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 04-3734 |
| | § | |
| BRECCA PRESTON-GUENTHER and | § | |
| ROBERT LEE GUENTHER, SR., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Came before the Court for trial, the Complaint to deny the Debtors' discharge, filed by the

Cadle Company ("Cadle").  This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district.  This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A) and (J).

In this adversary proceeding Cadle seeks the denial of Robert Lee Guenther and Brecca Preston-Guenther's ("Debtors'") discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3) and (a)(4). After the trial, the Court took the matter under advisement.  After consideration and for the reasons given below, the Court finds that the Debtors' discharge should be denied pursuant to § 727(a)(4).

I.  FACTS

The following facts are derived in large part from the jointly stipulated Pretrial Order. Cadle purchased two unpaid judgments against the Debtors.  Cadle then pursued aggressive post-judgment collection efforts through both the state and federal court system.  Mr. Guenther testified that during this time he pursued an aggressive strategy with Cadle and was not very forthcoming with information in post-judgment discovery proceedings.  The Guenthers and their children sued Cadle in Collin County and Cadle filed counterclaims against them.  On June 3, 2004, the United States District Court for the Northern District of Texas, A. Joe Fish, C.J., entered a memorandum opinion and order which determined that the Guenthers could no longer challenge Cadle's ownership of one of the judgments it was pursuing.

On September 22, 2004, the Debtors filed their bankruptcy in the Northern District of Texas, under Chapter 7 of the Bankruptcy Code.  At the time of the Debtors' bankruptcy filing,

they were officers, directors and/or members of ten or more limited liability companies or corporations. The Debtors filed their original Schedules on October 18, 2004, and their Statement of Financial Affairs ("SOFA") on October 19, 2004. These documents were incomplete at the time of filing and provide the heart of the instant adversary proceeding.

On November 16, 2004 Cadle filed a Motion for 2004 Examination and on December 22, 2004, with the Debtor, filed a stipulated Motion for Extension of Deadlines. Initial Disclosures were filed by Cadle on February 28, 2005. In these disclosures, Cadle asserted that multiple misrepresentations were made by the Debtors on their Schedules and Statement of Financial Affairs, that Cadle had previously brought to the Debtors' attention and that they had never been corrected.

The above facts culminated in Cadle bringing this adversary proceeding objecting to the Debtors' discharge, filed December 20, 2004 and amended on March 10, 2005. The Debtors filed an amended set of Schedules and SOFA on April 15, 2005, over four months after the errors were brought to their attention by Cadle.

**II. ISSUE**

Whether the Debtors should be denied a discharge pursuant to: (1) § 727(a)(2) concerning the transfer of property within a year of the filing of their bankruptcy case; (2) § 727(a)(3) for failure to preserve and disclose adequate financial records; and/or (3) § 727(a)(4)(A) for making a false oath in connection with their bankruptcy case because of the omissions and irregularities in their Schedules and Statement of Financial Affairs.

III. ANALYSIS

Section 727(a) must be construed liberally in favor of the debtor and strictly against the creditor objecting to the granting of the debtor's discharge. *F.D.I.C. v. Sullivan (In re Sullivan)*, 204 B.R. 919, 938 (Bankr. N.D. Tex. 1997). At the same time, however, discharge is not a right but a privilege which should be granted to those debtors who put forth a good faith effort in producing an entire picture of their financial affairs. *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900-901 (7th Cir. 2002). The burden of proof falls on the creditor to prove that the case falls within one of the 727(a) exceptions by a preponderance of the evidence. *See Grogan v. Garner*, 489 U.S. 279, 286, 111 S.Ct. 654, 660 (1991); *see also Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174 (5th Cir. 1992).

A. **Transfer of Assets: §727(a)(2)**

Cadle requests the denial of the Debtors' discharge under §727(a)(2) based on a claim that property was transferred within a year of filing the bankruptcy with fraudulent intent. The Bankruptcy Code in § 727(a)(2)(A) states:

> (a) The court shall grant the debtor a discharge, unless -
>
> (2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the
> estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, or concealed -
>
> (A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A). Cadle bears the burden of establishing that the transfers in question occurred with improper intent. *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89,

90-91 (5th Cir. 1989). Specifically, Cadle must prove the following four elements: "(1) a transfer [or concealment] of property; (2) belonging to the Debtors; (3) within one year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Cadle Company v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005) (citing *Chastant*, 873 F.2d at 90). Actual intent to defraud under § 727(a)(2)(A) may be inferred by the Debtors' actions and may be proved by circumstantial evidence. *Chastant,* 873 F.2d at 90. Both the act and the intent must exist or have occurred one year prior to the date of filing for bankruptcy. Anything occurring before this one year period is forgiven. *Rosen v. Benzer*, 996 F.2d 1527, 1531 (3rd Cir. 1993).

In the present case, the Court must consider five transactions. Three of the transactions involved transfers of the personal interests from one entity the Debtors solely owned to another entity they solely owned. These transfers involved the following entities: RLG Management, Inc., RLG Enterprises, Inc., and the Double B Trust. At trial, Mr. Guenther testified that these transfers occurred January 6, 2003, outside the one-year period of § 727(a)(2)(A). However, Cadle showed in a pre-bankruptcy deposition that Mr. Guenther had testified that these transfers actually occurred on January 6, 2004, within the one-year period. Regardless, the transfers between the Debtors and the RLG entities, even if they occurred within the one-year period, did not result in the transfer of property out of the control of the Debtors.

The three entities involved were all completely owned by the Debtors, and Cadle did not show evidence that these transfers had any effect on the estate of the Debtors or that they were made to hinder, delay or defraud. The remaining two proposed transfers involved transferring RLG Enterprises, Inc. stock to the Debtors' children. The testimony given by Mr. Guenther at

trial was that these transfers never occurred, and that the Debtors still remain the sole owners of RLG Enterprises. He stated that documents were drafted in contemplation of Mr. Guenther's deteriorating health, but upon his recovery, the transfers were never completed. The Debtors' accountant gave a similar explanation. Based on the record, this testimony was credible.

From the evidence before the Court, Cadle has failed to show by a preponderance of the evidence that any of these alleged transfers were made with the intent to hinder delay or defraud creditors. Further, the Court finds that the transfers made between the Debtor-controlled entities fall outside the one-year period, and the transfers to the Debtors' children were never consummated. Thus Cadle has failed to prove the required elements of § 727(a)(2)(A).

### B.    Withholding Financial Information: § 727(a)(3)

Cadle also requests the denial of the Debtors' discharge based on the Debtors' alleged withholding of financial information. This claim is brought under § 727(a)(3), which states:

> (a) The court shall grant the debtor a discharge, unless
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). This section places the initial burden on the creditor to "prove that the debtor failed to keep and preserve his financial records and that this failure prevented the party from ascertaining the debtor's financial condition." *Womble v. Pher Partners (In re Womble)*, 108 Fed. Appx. 993, 995 (5th Cir. 2004) (unpublished) (*citing Robertson v. Dennis (In re Dennis)*, 303 F.3d 696, 703 (5th Cir. 2003)). A debtor's financial records need not contain full detail, but there should be some written evidence of the debtors financial condition. *Dennis*, 303

F.3d at 703. "The duty to preserve or maintain such records requires the debtor to take 'reasonable precautions for the preservation of these records.'" *Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357, 375 (Bankr. S.D. Tex. 2005) (citing *In re Devine,* 11 B.R. 487, 488 (Bankr. D. Mass. 1981)).

The purpose of § 727(a)(3) is "to allow creditors and /or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands." *Womble*, 289 B.R. at 856 (*citing WTHW Inv. Builders v. Dias (In re Dias),* 95 B.R. 419, 422 (Bankr. N.D. Tex. 1988)). Often Debtors are poor record keepers, and the law does not require an impeccable system of bookkeeping. *Meridian Bank*, 958 F.2d at 1230. But by the same token, creditors should not be required to speculate about the financial condition of the debtor or hunt for the debtor's financial information. *Gartner*, 326 B.R. at 375. If the creditor's initial burden is satisfied, the burden shifts to the debtor to prove that the inadequacy is justified based on the totality of circumstances including what a reasonable person would do in similar circumstances. *See Id.*; *see also Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3rd Cir. 1992).

Debtors retained and made available to Cadle thousands of pages of financial information including tax returns, general ledgers, bank statements, and checks and deposit slips for the years 2001, 2002 and 2003 for their personal accounts and each of their business entities. The Debtors also produced bank statements, checks, deposit slips and/or check stubs for all accounts for which they had signatory authority within one year prior to their bankruptcy filing, and produced personal credit card statements that were retained for business expenses. However, they were not able to produce all of their personal credit card statements.

The Debtors retained and Cadle was provided with substantial bank information on the

Debtors and their entities. Cadle deposed Debtors and their accountant before the instant case was filed, and took a Rule 2004 examination of the Debtors prior to filing this adversary proceeding. The financial records the Debtors provided Cadle may have been missing a limited amount of credit card and bank account information; however, the Debtors' deficiencies were minor, given the massive amount of information reviewed and provided to Cadle. The Debtors' records contain information that would reasonably be maintained with respect to their personal affairs and also to their business transactions that Cadle has focused on in this litigation. The Court finds that Cadle was given adequate financial information from the Debtors.

In conclusion, under § 727(a)(3) the withheld financial records did not prevent Cadle from ascertaining the Debtors' financial condition.[1] Based on this finding, no justification is required as to why the financial records were withheld, and the Court will not deny the Debtors' discharge under § 727(a)(3).

### C.  False Oath: § 727(a)(4)

Finally, Cadle claims a denial of the Debtors' discharge is justified under § 727(a)(4)(A), because the Debtors offered false oaths in their original Schedules and SOFA. "Any debtor who files a Chapter 7 petition has a continuous, affirmative duty to disclose the following in a complete and accurate manner: (a) a list of creditors; (b) schedules of assets, liabilities, current income, and current expenditures; and (c) a statement of financial affairs." *Gartner*, 326 B.R. at 367 (citing

---

[1] Cadle moved to strike certain documents offered by Debtors because the documents had not, according to Cadle, been provided timely. At trial an evidentiary hearing was held regarding the documents which had been provided by the Debtors to Cadle and the Court took the issue under advisement. Debtors and a representative of Cadle testified. The Court ruled that certain documents would not be admitted because they were not timely provided to Cadle. However, given the volume and quantity of information retained and provided by Debtors to Cadle, even excluding the documents Cadle claims it never received in discovery, the Court finds that the Debtors produced sufficient financial information to allow Cadle to ascertain their financial condition.

*In re Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir. 1999)). "Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential because the schedules 'serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true.'" *Beaubouef,* 966 F.2d at 179 (quoting *In re Urban,* 130 B.R. 340, 344 (Bankr. M.D. Fla. 1991)).

> Section § 727(a)(4)(A) states:
> 
> (a) The court shall grant the debtor a discharge, unless
> 
> (4) the debtor knowingly and fraudulently, in or in connection with the case -
> 
> (A) made a false oath or account;

11 U.S.C. § 727(a)(4). To successfully object to the discharge of the Guenthers' debts under section 727(a)(4)(A), Cadle must show that: (1) the Guenthers made a statement under oath; (2) the statement was false; (3) the Guenthers knew the statement was false; (4) the Guenthers made the statement with fraudulent intent to deceive; and (5) the statement related materially to the bankruptcy case. *Pratt*, 411 F.3d at 566; *Beaubouef,* 966 F.2d at 178; *Gartner*, 326 B.R. at 367. False oaths may be in the form of either false statements or omissions on the schedules and statements of financial affairs or false statements by the debtor during the course of the bankruptcy proceedings. *Id.*

Cadle claims the Debtors made a false oath in both the original Schedules and SOFA by omitting information in four areas: (1) closed and open bank accounts; (2) Debtors' interests in various entities; (3) transfers of property; and (4) the name of the Debtors' accountant. The Debtors do not dispute that they made statements under oath concerning these areas and that the

statements were false. However, Debtors claim the omission of certain information was accidental and that the name of the accountant was known to Cadle and was not provided because Debtors did not believe they were required to answer that question. Mr. Guenther testified that he hurriedly filled out the original Schedules on a separate sheet of paper and sent the information to his attorney, who later filled everything out, and that the missing bank account information was included on the information he sent to his attorney.[2] Ms. Guenther testified that she spent about <u>thirty seconds</u> looking over the schedules and statements before she signed them.

*Reckless Indifference to the Truth*

The schedules and statements submitted in a bankruptcy case are signed under oath, and while they are not required to be perfect, the Fifth Circuit has made it clear that debtors are not entitled to a discharge where they make statements under oath with "reckless indifference to the truth." *Sholdra v. Chilmark Financial LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). Debtors showing of reckless indifference to the truth in filling out their schedules and statements is equivalent to showing the requisite fraudulent intent to deceive sufficient to bar a discharge under § 727(a)(4)(A). *Beaubouef,* 966 F.2d at 178; *Gartner*, 326 B.R. at 371-372. Debtors who make more than one false statement under oath with an opportunity to clear up the inconsistencies have demonstrated recklessness, which is sufficient for the bankruptcy court to infer the requisite intent. *Id.*

The intent of these misrepresentations in the Debtors' Schedules and SOFA may be

---

[2] At trial, the Debtors never produced these draft schedules and statements that Mr. Guenther claims were sent to his attorney with the correct bank account information. The Court notes that the Guenthers asked for an extension of time to fill out and file their schedules and statements because they were "complicated" and needed to be researched. They took an additional eleven days, for a total of twenty-six days to complete them, inaccurate as they were. The request for extension calls into question whether the inaccuracies in the schedules and statements were accidental.

**MEMORANDUM OPINION - Page 10**

debated individually, but taken in the aggregate a pattern begins to develop. *See Economy Brick Sales, Inc. v. Gonday (In re Gonday),* 27 B.R. 428, 432 (Bankr. M.D. La. 1983) ("[T]he cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth [to support] fraudulent intent."). Also, the Debtors' case is greatly weakened in the area of the requisite intent by their prepetition activities in dealing with Cadle. In fact, the Debtors have thwarted the discovery and disclosure process in every encounter with Cadle. The obvious game playing strikes at the purpose of why a false oath can cause a discharge to be denied. On every occasion, whether it was in pre-petition discovery, the SOFA or the original Schedules, the Debtors withheld some information. The Debtors' disruptive pattern includes such contradictions as arguing that a deadline extension is needed to make sure all disclosed information is correct, only to return disclosures with blatant discrepancies, such as stating that they neither owned businesses nor were signatories on certain bank accounts.

It may be close to impossible to produce Schedules and SOFAs that contain no mistaken information, and bankruptcy papers with mistakes are not, alone, enough to bar a debtor's discharge. But, the appropriate response is to offer amended information in a prompt fashion, and not to wait to amend the errors only after the insistence of one of their creditors. *See Sholdra*, 249 F.3d 380, 382; *see also Beaubouef,* 966 F.2d at 178 (debtor waited six months to amend after a 2004 examination revealed inaccuracies). The Debtors' extended delay of over four months in amending their Schedules and SOFA adds to the pattern of withholding information and of fraudulent intent. This Court, taking all these factors into consideration, finds that the Debtor possessed fraudulent intent when making false oaths on the Original Schedules and SOFA. It is the totality of the facts in this case which leads this Court to find that Debtors have acted with

**MEMORANDUM OPINION - Page 11**

fraudulent intent and/or reckless disregard for the truth.

*Materiality*

The final consideration under § 727(a)(4)(A) is whether the statement related materially to the bankruptcy case. "[A] false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or the existence and disposition of his property." *In re Pratt*, 411 F.3d at 566 (quoting *Beaubouef*, 966 F.2d at 178). "A debtor's claim that he omitted an asset because the asset has no value or would not be detrimental to creditors is irrelevant and without merit. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *Gartner*, 326 B.R. at 372 (citations omitted); *see also Beaubouef*, 966 F.2d at 179 (company that was not listed was material even though it no longer did business and had no assets); *In re Pratt*, 411 F.3d at 567 (citing *Johnson v. Baldridge (In re Baldridge)*, 256 B.R. 284, 290 (Bankr. E.D. Ark. 2000) for the proposition that the omission of bank accounts was material, even if the accounts had little or no balance).

The status of bank accounts, interests in businesses, and the identity of accountants all "bear a relationship" to the Debtors' estate. These are the basic matters about which creditors and the Court are most concerned. Therefore, the Court finds the materiality requirement is sufficiently satisfied.

## IV. CONCLUSION

This Court finds no grounds under § 727(a)(2) or (a)(3) to deny the Debtors' discharge. However, there are grounds under § 727(a)(4)(A) to deny their discharge based on the pattern of fraudulent intent by the Guenthers. They have shown an inability to be truthful or complete in their disclosures prior to and during the bankruptcy process. Based on the evidence before the Court, the denial of the Debtors' discharge sought by the Cadle Company will be granted under § 727(a)(4)(A).

The Court will enter a separate judgment consistent with this decision.

### ### End of Opinion ###